IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Criminal Action No. |
| v. | : | 2:16-CR-009-RWS-JCF |
| | : | |
| HORACE MAYFIELD, LEONARDO | : | |
| STEEPLES[1], and NATHAN ANTONIO | : | |
| HOWARD, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Criminal Action No. |
| v. | : | 2:16-CR-0010-RWS-JCF |
| | : | |
| HORACE MAYFIELD | : | |
| | : | |
| Defendant. | : | |

## **REPORT AND RECOMMENDATION**

This matter is before the undersigned on the following motions filed in

Criminal Action No. 2:16-CR-9: Defendant Horace Mayfield's Motion To

Suppress Physical Evidence Seized In Unlawful Search (Doc. 121); Defendant

Leonardo Steeple's Motion To Suppress Physical Evidence Seized in Unlawful

---

[1] Although the Indictment (Doc. 1) and caption indicate that Defendant's surname
is "Steeples," the parties refer to him as "Steeple" (*see, e.g.*, Docs. 350, 352), and
so the undersigned will also refer to him as "Steeple."

Search (Doc. 141); Defendant Nathan Antonio Howard's Motion To Suppress Physical Evidence Seized In Unlawful Search (Doc. 152); Defendant Howard's Request For Leave To File Out Of Time, His "Amended Motion To Suppress Physical Evidence Seized In Unlawful Search" (Doc. 349); and Defendant Steeple's Request For Leave To File Out Of Time, His "Supplemental Motion To His First Motion To Suppress" (Doc. 350).  Defendant Mayfield also filed the same Motion To Suppress Physical Evidence Seized In Unlawful Search in Criminal Action No. 2:16-CR-10 (Doc. 100).[2]

## Background

In Criminal Case No. 2:16-CR-9, Defendants Horace Mayfield, Nathan Antonio Howard, Leonardo Steeple and others are charged in a 16-count Indictment with drug-related offenses, including conspiracy.  (Doc. 1, 2:16-CR-9). The 12-count Indictment filed in 2:16-CR-10 similarly charges Defendants Mayfield and others with drug-related offenses, including conspiracy.  (Doc. 1, 2:16-CR-10). Defendant Mayfield filed a motion to suppress evidence seized from his residence at 714 Baskins Circle, Winder, Georgia pursuant to a search warrant issued on February 15, 2016 (Doc. 121; *see also* Doc. 100, 2:16-CR-9); Defendant Steeple filed a motion to suppress evidence seized from his residence at 196 Tabitha Paige Lane, Toccoa, Georgia and at a business, Chosewood Auto Sales

---

[2] Unless otherwise specified, references to docket entries shall be to entries in 2:16-CR-9.

("Chosewood Auto") at 7124 Dicks Hill Parkway, Mt. Airy, Georgia pursuant to search warrants issued on February 12, 2016 (Doc. 141); and Defendant Howard filed a motion to suppress evidence seized from his purported residence at 1995 Carithers Way, Marietta, Georgia and at Chosewood Auto Sales pursuant to search warrants issued on Febuary 12, 2016 (Doc. 152).   The Government filed a consolidated response to Defendants' motions.  (Doc. 330; *see also* Doc. 269, 2:16-CR-10). Mayfield submitted a reply (Doc. 345; *see also* Doc. 283, 2:16-CR-10), but Defendants Howard and Steeple did not.   Instead, they moved to supplement their motions to assert additional grounds for suppression (Docs. 349, 350). The Government objected to their motions as untimely (Doc. 352), and Howard and Steeple filed replies in support of their request to amend (Docs. 355, 356).   The Court directed the Government to file a response to Defendants' arguments made in their proposed amended motions to suppress and indicated it would consider the issue of the timeliness of Defendants' motions to amend when it considered the merits of their motions to suppress.   (*See* Doc. 353).   The Government has done so (Doc. 359); Defendants did not reply to that response. Briefing is complete, and the undersigned now considers the merits of Defendants' motions.

**Discussion**

## I.   Defendant Mayfield's Motions To Suppress (Doc. 121 in 2:16-CR-9 and Doc. 100 in 2:16-CR-10

Defendant Mayfield moves to suppress evidence seized from his residence at 714 Baskins Circle, Winder, Georgia on February 17, 2016 pursuant to a search warrant issued by a Barrow County Superior Court Judge on February 15, 2016 (*see* Doc. 330-1) based on an affidavit submitted by GBI Special Agent Clay Bridges (*see* Doc. 330-1 at 1-75).  (Doc. 121; *see also* Doc. 100, 2:16-CR-10). "Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid." *United States v. Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *14 (N.D. Ga. Sept. 13, 2012) (internal quotation omitted), *adopted by* 2012 U.S. Dist. LEXIS 153867 (N.D. Ga. Oct. 26, 2012).  "It is not easy for a Defendant to meet this burden, and a judicial preference is accorded searches under a warrant." *United States v. Teague*, No. 2:10-CR-006-RWS-SSC, 2010 U.S. Dist. LEXIS 142717, at *86 (N.D. Ga. Nov. 22, 2010) (internal quotation omitted), *adopted by* 2011 U.S. Dist. LEXIS 42260 (N.D. Ga. Nov. 22, 2010).

"The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty."  *L.A. County v. Rettele*, 550 U.S. 609, 615 (2007).  The task of a magistrate judge, when issuing a warrant, " 'is simply to make a practical, commonsense decision whether, given all the circumstances set

4

forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The *Miller* court explained the role of a court reviewing a search warrant:

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrate[ judges] in their probable cause determinations.

*Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

The undersigned has considered Agent Bridges' affidavit (Doc. 330-1 at 1-75) with these principles, and Defendant Mayfield's arguments about its deficiencies (*see* Docs. 121, 345), in mind. It is not necessary to determine whether the affidavit established the existence of probable cause to believe that evidence of a crime would be found at Defendant's residence, however, because the good faith exception to the exclusionary rule set out in *United States v. Leon*, 468 U.S. 897 (1984) applies in this case. *See, e.g., United States v. Jones*, 149 F. Appx 954, 963 (11th Cir. 2005) (unpublished decision) ("We need not determine whether probable cause existed, because the good faith exception applies here."); *United States v. Dos Santos*, No. 1:05-CR-613-TWT, 2006 U.S. Dist. LEXIS 55943, at *15 (N.D. Ga. June 21, 2006) ("The good faith exception is applicable to

this case; therefore, this court need not reach the underlying issue of probable cause."), *adopted by* 2006 U.S. Dist. LEXIS 55944 (N.D. Ga. July 25, 2006).

The exclusionary rule, which provides that evidence seized as the result of a search violative of the Fourth Amendment may not be used by the Government in a subsequent criminal prosecution, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Martin*, 297 F.3d at 1312 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).  In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court addressed the limited role of the exclusionary rule:

> The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies.  *Illinois v. Gates*, 462 U.S. 213, 223[] (1983).  Indeed, exclusion "has always been our last resort, not our first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591[] (2006), and our precedents establish important principles that constrain application of the exclusionary rule.

*Id.* at 140.  The Court explained that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Id.* at 144.  The purpose of the exclusionary rule is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."  *Id.*

In *Leon*, the Supreme Court modified the exclusionary rule to allow prosecutors to use evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. In *Martin*, the Eleventh Circuit Court of Appeals explained what has become known as the *Leon* good faith exception to the exclusionary rule:

> [*Leon*] stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319[] (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

*Martin*, 297 F.3d at 1313 (original formatting altered).

The first, second and fourth circumstances are not present here—Mayfield has not shown that Agent Bridges misled the issuing judge; there is no evidence that the issuing judge abandoned his judicial role in issuing the warrant; and the warrant sufficiently describes the person, premises, and property to be searched,

and the things to be seized (*see* Doc. 330-1 at 76-80).   Rather, Defendant's arguments in support of suppression implicate the third circumstance described in *Leon*—that the affidavit was so lacking in indicia of probable cause to believe that evidence of a crime would be found at Mayfield's residence that official belief in its existence was unreasonable.

Here, Agent Bridges' affidavit states the following: In July 2015 two confidential informants (CI) told agents that they had been purchasing methamphetamine from Mayfield for three to four months at multiple locations. (Doc. 330-1 at 10-17).   On July 13, 2015, agents recorded conversations between one of the CIs and Mayfield discussing drug trafficking and how Mayfield "orchestrates" his trips to Atlanta to resupply, i.e., he uses two vehicles, on in which he is traveling and the other in which the methamphetamine is placed so that if he is pulled over, "he's clean and the first car[] keeps going."   (*Id*. at 10). During the agents' surveillance of Mayfield, they observed him using counter surveillance measures, such as taking erratic turns when driving to multiple locations, consistent with counter surveillance measures taken by drug traffickers before and after drug transactions, and they also observed him traveling with two cars, consistent with the manner he described when transporting narcotics.   (*Id.* at 10,

13-15, 17-18, 25).   On January 7, 2016 "CRS #1"[3] provided information that Mayfield had one kilogram of cocaine at his Baskins Circle residence that "he was preparing for distribution by breaking it down into smaller quantities."   (*Id.* at 19). CRS #1 indicated that Mayfield lived at 714 Baskins Circle in Barrow County and "used this location as a base of operations for his multi county and multi state drug trafficking business."   (*Id.* at 62).   Agents, who had conducted surveillance of Mayfield for 60 days, "confirmed that he begins most days and ends most days at this location," and his vehicles were parked at that location when not in use.   (*Id.*).

On January 16, 2016 CRS #1 informed agents that Mayfield planned to pick up money from a subject, later identified to be Mario Stowers, in South Carolina, and agents observed Mayfield and Audreona Scott at Stowers' residence in South Carolina.   (*Id.* at 29).   An Oconee County, South Carolina Sheriff's Investigator

---

[3] As discussed below in addressing Steeple's and Howard's motions, "CRS #1" referred to information obtained pursuant to wiretaps authorized by Stephens County Superior Court Judge Russell W. Smith, who ordered "all law enforcement officers . . . to refer to the intercepted communications as a 'confidential source' for all relevant purposes; such as search warrant affidavits . . . until such time as notice is required to be supplied to the suspects in this investigation."   (Doc. 330 at 5; *see also* Doc. 330-5 at 2).   The search warrant affidavit therefore did not identify CRS #1 as a wiretap, but the affidavit did state that "CRS #1 has been recognized, by Stephens County Chief Superior Court Judge RUSSELL W. SMITH, as a confidential, reliable source."   (Doc. 330-1 at 74). The affidavit also states, "Since January 7, 2016, Agent HOWARD has worked with a third confidential, reliable source, hereinafter referred to as CRS #1.   CRS #1 has given information detailing multiple marijuana, cocaine, and methamphetamine transactions in which MAYFIELD and others participated.    This information was corroborated by extensive law enforcement surveillance[.]"   (*Id*. at 19).

informed agents that Stowers was a target of a methamphetamine and cocaine trafficking investigation. (*Id.*). Following Mayfield's visit to Stowers, CRS #1 informed agents that Mayfield had placed an order for "cream," which "is street lingo for methamphetamine." (*Id*. at 30). CRS #1 also provided information that Mayfield intended to travel to a Target shopping center in Atlanta. ( *Id.*). At approximately 2:30 p.m., Agent Howard observed Mayfield and Scott arrive at that location in a black BMW, and he saw another gray BMW arrive, driven by a person later identified as Gus Melendez. (*Id*.). Melendez exited his vehicle with a backpack, got into the back of Mayfield's and Scott's vehicle, and then exited the vehicle without the backpack. (*Id.*).

Later that day, at 7:23 p.m. CRS #1 provided information that Mayfield was arranging to meet someone to deliver "three," possibly meaning three ounces of methamphetamine. (*Id.* at 31). At 7:38, Mayfield and Scott left Baskins Circle and met a Mercedes in a parking lot in South Carolina before traveling to the area of Stowers' residence in South Carolina. (*Id*. at 31-32). CRS #1 provided information that Mayfield was on his way to visit Stephens Ivester to deliver "something," and Agent Howard observed Mayfield arrive at an address in Stephens County, Georgia, and CRS #1 provided information that Mayfield was leaving "two and a half" at Ivester's residence. (*Id.* at 32). On January 20, 2016, Mayfield and Scott left Baskins Circle and parked in a parking lot at a truck stop in

South Carolina next to the same Mercedes seen on January 16, 2016 at the same location. (*Id.* at 36). Mayfield exited the Mercedes carrying a black backpack. (*Id.*). The affidavit describes additional surveillance observations as well as information obtained from CRS #1 that indicates that Mayfield continued to engage in drug trafficking activity through the rest of January and into February 2016. (*See generally id.* at 34-60).

The undersigned finds that the information set forth in Agent Bridges' affidavit shows that it was not so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Martin*, 297 F.3d at 1313. The warrant sufficiently alleges facts that support a finding of probable cause to believe that Mayfield was engaged in drug trafficking from before July 2015 until February 2016 and that evidence of that crime would be found in his residence at the Baskins Circle address. *See, e.g.*, *United States v. Cunningham*, 633 Fed. Appx. 920, 922 (11th Cir. 2015) (finding that warrant was supported by probable cause where affidavit described evidence that the defendant was engaged in drug trafficking and "law enforcement officials attested that, based on their significant experience with drug investigations, drug traffickers often store evidence of their crimes in their homes").

Mayfield contends, however, that the search warrant does not establish probable cause to believe that evidence of a crime would be found at the Baskins

Circle address.  (Docs. 121, 345).  First, he challenges the veracity of CRS #1 as to the information provided by CRS #1 that Mayfield possessed a kilogram of cocaine at the Baskins Circle residence: "The informant may have simply heard a rumor about his 'kilogram of cocaine' from a totally reliable source.  The informant may have assumed that Mayfield kept cocaine at home, or he may have been trying to impress the agents with a factually unsupported fabrication."  (Doc. 121 at 5-6).  "In general, '[i]f an informant is mentioned in an affidavit [underlying a search warrant], the affidavit must also demonstrate the informant's 'veracity' and 'basis of knowledge.' "  *Martin*, 297 F.3d at 1314.  "However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."  *Id.*  Here, the affidavit stated the following about CRS #1:

> CRS #1 has been proven to be reliable and truthful in ITS dealings with Agent BRIDGES.  In the last 14 days, CRS #1 has provided information, to AGENTS, which lead to the arrest of two people for trafficking cocaine and the seizure of more than 900 grams of suspected cocaine.  Over the course of the last 5 weeks, CRS #1 has provided detailed information, to law enforcement, including identifications of participants in[, and locations, and times for] methamphetamine, marijuana and cocaine transactions, and amount of methamphetamine, marijuana and cocaine involved in the transactions.  All of this was corroborated by extensive law enforcement surveillance outlined above.  CRS #1 has provided no information that was later found to be untrue.  CRS #1 has been recognized[] by Stephens County Chief of Superior Court Judge RUSSELL W. SMITH, as a confidential, reliable source.

(*Id.* at 74).   Thus, the affidavit sets forth facts demonstrating CRS #1's reliability and veracity.  Even if the affidavit insufficiently demonstrates CRS #1's "basis of knowledge" as to the presence of cocaine in Mayfield's residence, sufficient indicia of probable cause existed to believe that evidence of drug trafficking would be found there in light of the extensive surveillance and information provided by CRS #1 which shows that while engaged in drug trafficking activity described in the affidavit, Mayfield was living at that residence, and he parked his vehicles used in drug trafficking at that address.   *See, e.g.*, *United States v. Meryl*, 322 Fed. Appx. 871, 874 (11th Cir. 2009) (unpublished decision) (noting the district court's "common-sense finding that 'drug dealers are likely to keep evidence of their drug business at home' " in finding that probable cause supported the issuance of the warrant); *United States v. Villa[n]ueva Pineda*, No, 1:11-CR-00006-CAP-JFK, 2012 U.S. Dist. LEXIS 98692, at *28 (N.D. Ga. June 4, 2012) ("A suspect's home and business are the most obvious and natural location such materials to be likely located in the first instance." (quotation omitted)), *adopted by* 2012 U.S. Dist. LEXIS 98192 (N.D. Ga. July 16, 2012).

Moreover, as discussed below, CRS #1 was the designation for information from wiretap recordings of Mayfield and others, and therefore Agent Bridges had information concerning CRS #1's basis of knowledge about the cocaine in Mayfield's residence, and therefore the information in the affidavit, as well as

additional information known to Agent Bridges but not included in the affidavit, provide sufficient indicia of probable cause to determine that Agent Bridges' reliance on the warrant was reasonable. *See, e.g., United States v. Bridges*, 347 Fed. Appx. 459, 463 (11th Cir. 2009) (finding that the investigator's "affidavit and the additional facts known to him that were omitted from the affidavit contained enough indicia of probable cause to determine that his reliance on the warrant was reasonable"); *see also Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *27 (finding that the officers "had an objectively reasonable basis to believe that the warrant was valid" based on the information contained in the affidavit as well as information not included in the affidavit).

Mayfield also argues that "the Affidavit does not contain any information which suggests that any crime had been recently committed at the Baskins House, or that any contraband or physical evidence might still be located at that residence for any reason" because the "[t]he Affidavit only contains a single reference [to] criminal activity at the Baskins House," i.e., that confidential informant alleges that on January 7, 2016 Mayfield possessed "approximately one kilogram of cocaine" at the subject address which he "was preparing . . . for redistribution." (Doc. 121 at 2-3). Plaintiff further argues that "[t]he Affidavit provides no factual basis for a judicial officer to conclude that any portion of the cocaine was still located at the

Baskins House 39 days later on February 15, 2016" when Agent Bridges obtained the warrant.  (Doc. 100 at 3; *see also* Doc. 345 at 2).  The undersigned disagrees.

"[P]robable cause must exist when the magistrate judge issues the search warrant." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).  Therefore, "the information supporting . . . the [G]overnment's application for a search warrant must be timely*." Id.*; *see also Martin*, 297 F.3d at 1314 ("The information in the affidavit must also be fresh.").  There is no rule that sets out "arbitrary time limitations for presenting information to a magistrate."  *Harris*, 20 F.3d at 450.  Rather, courts review staleness challenges on a "case-by-case" basis, taking into consideration "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched."  *Id.*

Here, the search warrant affidavit describes Mayfield's involvement in drug trafficking activity from before July 2015 until February 2015, as reported by two confidential informants and CRS #1, and as observed by agents, and the affidavit indicates that Mayfield continued to live at the Baskins Circle residence and use it as a "base of operations" during the period under surveillance as he was seen leaving and returning there and parking his vehicles there.  Because the affidavit alleges an ongoing drug trafficking operation by Mayfield, the undersigned finds that information about cocaine in his residence 39 days before the warrant was

issued was not stale.  *See, e.g.*, *United States v. Johnson*, 290 Fed. Appx. 214, 222-23 (11th Cir. 2008) (unpublished decision) (rejecting staleness challenge to information that was over two weeks older noting cases involving "much older information" from 6 to 11 months, and noting that the defendant was alleged to be involved in an "ongoing drug operation housed in a 'semi-permanent' location that was unlikely to relocate in 15 days"); *Harris*, 20 F.3d at 450-51 (rejecting staleness challenge even though "most of the information contained in the affidavit referred to events which took place over two years before [the agent] applied for a warrant" because the affidavit described an "a long and protracted criminal conspiracy" involving drug trafficking and money laundering and included facts indicating that the defendant continued to be involved with the coconspirators).

The undersigned finds that it was not unreasonable for Agent Bridges "to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause," nor was it unreasonable for the agents executing the warrant to believe that it was supported by probable cause.  *Martin*, 297 F.3d at 1315.  Rather, "[t]he affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid."  *Id.*  Accordingly, the *Leon* good faith exception to the exclusionary rule applies.  *See, e.g., United States v. McClure*, 160 Fed. Appx. 842, 844-45 (11th Cir. 2005) (unpublished decision) (finding that *Leon* good faith exception applied even where "the affidavit for the

16

search warrant [did] not explicitly state any grounds for believing [the informant's] information was reliable, or the circumstances through which [the informant] made his disclosure to police"  because "it was not entirely unreasonable for [Officer] Creel to believe his affidavit supported a finding of probable cause, as it tied the defendant to the residence and the criminal activity with specific dates, and, therefore, sufficient information was contained within [the affidavit] to conclude that a fair probability existed that seizable evidence would be found in the place to be searched"); *United States v. Henry*, No. 1:09-CR-0522-1-TCB-GGB, 2010 U.S. Dist. LEXIS 139164, at *16-18 (N.D. Ga. Dec. 7, 2010) (finding that, even if probable cause was lacking due to the alleged staleness of information in the affidavit, "the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence unreasonable," and therefore, the *Leon* good faith exception applied), *adopted by* 2011 U.S. Dist. LEXIS 1641 (N.D. Ga. Jan. 6, 2011).

Moreover, there is no evidence that Agent Bridges' conduct in seeking the warrant or the agents' conduct in executing the warrant was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Nor is there evidence that the agents engaged in "deliberate, reckless, or grossly negligent conduct," such that exclusion of the evidence seized is warranted. *Id.*  It

is therefore **RECOMMENDED** that Mayfield's motions to suppress evidence seized from 714 Baskins Circle, Winder, Georgia on February 17, 2016 pursuant to the February 15, 2016 search warrant (Doc. 121, 2:16-CR-9; Doc. 100, 2:16-CR-10) be **DENIED**.

## II.   Defendant Steeple's Motion And Supplemental Motion To Suppress (Docs. 141, 350-1)

Defendant Steeple moves to suppress evidence seized from his residence at 196 Tabitha Paige Lane, Toccoa, Georgia on February 17, 2016 pursuant to a search warrant issued on February 12, 2016 by a Stephens County Superior Court Judge and also moves to suppress evidence seized from Chosewood Auto at 7124 Dicks Hill Parkway, Mt. Airy, Georgia pursuant to a February 12, 2016 search warrant issued by a Habersham County Superior Court Judge.  (Doc. 141).

### A.   Motion To Supplement Motion To Suppress (Doc. 350)

On November 7, 2017, the Government filed its response to Defendants motions to suppress.  (Doc. 330).  Defendants had 14 days to submit their replies, but Steeple and Howard did not do so.  Instead, on January 18, 2018, Howard filed an amended motion to suppress (Doc. 346) and Steeple moved to adopt it (Doc. 347).  The Court denied the motion to adopt and directed Defendants to file motions for leave to file their untimely motions to suppress.  (Doc. 348).  Steeple then filed a motion to supplement his motion to suppress pursuant to FED. R. CRIM. P. 12(c)(2) and 12(c)(3) in order to raise additional grounds in support of

18

suppression based on the fact that the search warrant affidavits at issue do not disclose that CRS #1 was a wiretap, not a human being, and to challenge the accuracy of the information attributed to CRS #1.  (Doc. 350).  The Government objects to allowing Defendants to supplement their motions because the motions are untimely, and they have not shown good cause for the untimely amendments to their motions to suppress.   (Doc. 352).   The Government points out that Defendants do not identify when they learned that CRS #1 was a recording device and not a human being, but posits that they knew or should have known as early as May 2016 when they filed their original motions to suppress and knew that there was a wiretap on Mayfield's phone and knew that the judge who authorized the wiretap directed that wiretap information be referred to as a confidential source. (*Id.* at 2-3).  The Government also points out that it disclosed in its November 7, 2017 response brief that CRS #1 referred to information from a wiretap, yet Defendants did not file a reply or seek an extension to do so, but instead waited over two months later to amend their motions.  (*Id.* at 3-4).

Rule 12(c)(2) provides that "[a]t any time before trial, the court may extend or reset the deadline for pretrial motions," and Rule 12(c)(3) provides that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion [including motions to suppress], the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause."  FED. R. CRIM. P.

12(b)(2), (3). "The trial court enjoys discretion in deciding whether a suppression motion has been timely made." *United States v. Grimes*, 911 F. Supp. 1485, 1491 (M.D. Fla.) (citing *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990) and *United States v. Milian-Rodriguez*, 828 F.2d 679, 683 (11th Cir. 1987) and recommending that motion to suppress be determined on the merits rather than denying it as untimely), *adopted by* 911 F. Supp. 1485, 1487 (M.D. Fla. 1995).

Although the undersigned finds some merit to the Government's position, for several reasons the undersigned recommends that Defendant Steeple be allowed to supplement his motion to suppress and that the Court decide his motion on the merits, including the arguments made in his supplemental motion. "First, and most importantly, it has been held the 'desire to avoid penalizing a criminal defendant for the inadvertence of his attorney constitutes "cause" under [Rule] 12[] and is within the court's discretion.' " *Grimes*, 911 F. Supp. at 1491 (quoting *United States v. Hall*, 565 F.2d 917, 920 (5th Cir. 1978)). "Second, denying the Motion to Suppress solely on the basis of untimeliness would likely open the door for a collateral attack by the Defendant and, if so, lead to a waste of judicial resources." *Id.* The undersigned notes that the Government has responded to the substance of Defendant's supplemental motion (*see* Doc. 359), and therefore the Court has before it the necessary briefing on the merits and in the interests of

justice and judicial economy, the Court should reach them rather than apply a procedural bar to Defendant's supplemental grounds for suppression.

Accordingly, it is **RECOMMENDED** that Defendant Steeple's motion to supplement his motion to suppress (Doc. 350) be **GRANTED**.

### B.   Motion To Suppress As Supplemented

In his initial motion to suppress, Defendant Steeple argued that the warrants for the Tabitha Paige Lane residence and Chosewood Auto are not supported by probable cause, and the warrants "are not specific and allow the individual police officers to use their own discretion for what they are looking for." (Doc. 141 at 12-22).[4]   In his supplemental motion, Steeple argues that Bridges' affidavits "contain misstatements of fact and omissions" which Bridges "knew to be false or misleading or should have known to be false or misleading," and these misstatements and omissions misled the issuing judge. (Doc. 350-1 at 2).

As was true with respect to Mayfield's motion, the undersigned finds that it is unnecessary to determine whether probable cause supported the issuance of the Tabitha Paige Lane and Chosewood Auto search warrants because the *Leon* good faith exception applies in this case. The second circumstance described in *Leon*— "where the issuing magistrate wholly abandoned his judicial role"—is not present

---

[4] Steeple also argues that the affidavits supporting the search warrants "are based on poisonous fruit from inadmissible wiretap evidence" (Doc. 141 at 9-12) but the Court has denied Defendants' motions to suppress wiretap evidence (*see* Doc. 312) and therefore the undersigned does not reach this argument.

here.  Defendant has made no showing that the issuing judge abandoned his role in reviewing the affidavit and issuing the warrant, and as discussed below, the affidavit is not so lacking in indicia of probable cause to demonstrate that the judge simply rubber-stamped Bridges' request for a search warrant.  *See, e.g.*, *United States v. Hendon*, 253 Fed. Appx. 809, 812 (11th Cir. 2007) (unpublished decision) (finding that the defendant had "presented no evidence to show that the state judge merely 'rubber stamped' the search warrant," and explaining that even though the district court found the warrant affidavit lacking in probable cause, "such a finding does not automatically indicate that the state judge abandoned his judicial role").

Instead, Steeple's arguments implicate the first, third, and fourth circumstances in *Leon*—that Agent Bridges misled the issuing judge by omitting material information and making false statements in his affidavit, that the affidavit was so lacking in indicia of probable cause to believe that evidence of a crime would be found at the Tabitha Paige Lane and Chosewood Auto locations that official belief in its existence was unreasonable, and that the warrant failed "to particularize the place to be searched or the things to be seized."  The undersigned finds these contentions to be without merit.

### 1.   **Fourth *Leon* Circumstance**

In the first place, the search warrants sufficiently describe the places to be searched and the things to be seized.  The Tabitha Paige Lane warrant (Doc. 330-2

at 73-77) lists the following persons, premises, or property to be searched: 196 Tabitha Paige Lane, Toccoa, Georgia, with physical location and description of property, and any outer buildings or structures within the curtilage; Defendant Steeple with date of birth, social security number and physical description; specific vehicles described in the warrant; and any vehicles in the curtilage of the described premises. (Doc. 330-2 at 73). The warrant also lists 14 categories of "instruments, articles, person(s), or things" to be seized, "[w]hich is in violation of the Georgia Controlled Substances Act, O.C.G.A. § 16-13-30." (*Id*. at 74-76). The search warrant for Chosewood Auto similarly describes the person, premises, or property to be searched and lists 14 categories of "instruments, articles, person(s), or things" to be searched and seized as evidence of O.C.G.A. § 16-13-30. (Doc. 330-3 at 75-78). The undersigned finds that these warrants sufficiently describe the items to be searched for and seized, limited to evidence of violations of Georgia's Controlled Substances Act, and therefore the fourth circumstance described in *Leon* is not met.

## 2.   **Third *Leon* Circumstance**

Next, the undersigned does not find that the affidavits were so lacking indicia of probable cause that official belief in the existence of probable cause was

23

entirely unreasonable.[5]  The affidavits presented evidence that Steeple lived at the Tabitha Paige Lane residence, including driver's license information, and that he worked at Chosewood Auto, as indicated by Georgia Department of Labor information.  (*See* Doc. 330-2 at 16, 62, 65).  The affidavits also link Steeple to Mayfield and others involved in the drug trafficking under investigation and to their alleged drug trafficking activities, and they indicate that some of that activity occurred at the Tabitha Paige Lane and Chosewood Auto locations.  Specifically, the affidavit states that on November 25, 2015, agents observed Mayfield "travel to the residence of LEONARDO GABRIEL STEEPLE, (a known cocaine trafficker in the Stephens County, Georgia area)[6] at 196 Tabitha Page Ln. in Toccoa, Georgia." (Doc. 330-2 at 16).  Mayfield stayed at Steeple's residence 10 minutes, left, returned about an hour later and remained for 20 minutes, then traveled to Chosewood Auto where Steeple worked.  (*Id.*).  Bridges stated in his affidavit that he had "received information previously that STEEPLE uses vehicles from this business to transport large quantities of narcotics." (*Id.*).  Mayfield remained at that location for 24 minutes and then returned to the location at 3:26 and remained

---

[5] Bridges' affidavits in support of the Tabitha Paige Lane and Chosewood Auto search warrants are essentially the same and therefore the undersigned cites to the Tabitha Paige Lane affidavit.

[6] The affidavit indicates that Steeple was arrested in 2002 in Banks County and charged with trafficking cocaine, illegal drugs, marijuana, or methamphetamine and convicted in 2004 and also convicted of felony possession of marijuana and was also arrested in 2010 for felony marijuana violations.  (Doc. 330-2 at 68).

for 56 minutes.  (*Id.*).  On January 19, 2016, Mayfield's vehicle was observed on Tabitha Paige Lane in Toccoa, Georgia.  (*Id.* at 31, 33).  On January 29, 2016, an agent advised Agent Howard that he received information from CRS #1 that Mayfield had contacted Avero Howard about retrieving a gun from Howard's closet, Howard told Mayfield where to find the gun, and Howard cautioned him not to ride around with the gun in the vehicle.  (*Id.* at 39).  According to CRS #1, Mayfield told Howard he did not intend to do so and that he was on his way to drop the weapon at another location.  (*Id.*).  Agent Howard saw Mayfield parked in the driveway of 317 Skyview Lane and observed him leaving that address, and electronic surveillance indicated that Mayfield then drove to Chosewood Auto. (*Id.*).    These actions lead Agent Howard to believe that Mayfield intended to deliver the weapon to Chosewood Auto.  (*Id.*).    Mayfield left that location approximately 7 minutes after he arrived.  (*Id.* at 39-40).  Later than day the agents received information from CRS #1 that Mayfield told Quincy Jones that "Nardo" (Steeple) "has a 'play,' " and Jones agreed to meet "Nardo" to assist.  (*Id.* at 40). The affidavit then described Jones' actions that day indicating that he was engaged in drug trafficking activity.  (*Id.* at 40-42).

On February 2, 2016, Agent Hodges received information from CRS #1 that Mayfield made arrangements to retrieve a sum of cash from an unidentified person and intended to travel to South Carolina to obtain the money.  (*Id.* at 48).  An agent

observed Mayfield meet someone in a car in a truck stop parking lot in South Carolina. (*Id.*). Bridges then received information from CRS #1 that Mayfield intended to meet with Steeple to obtain more money. (*Id.* at 49). According to CRS #1, Mayfield had picked up "twenty-five" and needed "twenty-nine" to complete a drug transaction and intended to get the additional $4000 from Jones or Steeple. (*Id.*). A little over an hour later, Agent Posey observed Mayfield turn onto Tabitha Paige Lane at the same time that Agent Bridges received information from CRS #1 that Mayfield was obtaining money belonging to Steeple and Howard. (*Id.*). Agent Bridges learned from CRS #1 that Mayfield decided not to complete the drug transaction that day but instead left the $25,000 with Steeple, and arrangements were made by Mayfield and Steeple to complete a drug transaction the next day. (*Id.*). Mayfield then left 196 Tabitha Paige Lane and drove to his residence in Winder. (*Id.*).

The next day, February 3, 2016, CRS #1 provided information that Nathan Howard intended to meet Jones in Gainesville, Georgia in order to travel to another location to meet Steeple and Mayfield, along with another party, to purchase cocaine. (*Id.* at 50-51). At 12:40 Agent Howard saw Jones and Nathan Howard arrive at a gas station in Cornelia, Georgia; Nathan Howard opened his trunk, and either Howard or Jones lifted what appeared to be a heavy box out of the trunk and place it in the bed of Jones' truck. (*Id.* at 51-52). They also placed a large trash

bag in the truck.  (*Id.* at 52).  They also removed a bag from Howard's car and placed it inside Jones' truck.  (*Id.*).  At 12:41, CRS #1 provided information that Mayfield made arrangements to meet with someone in South Carolina that day to sell him drugs.  (*Id.*).  At 12:57, Agent Bridges told Agent Howard that Steeple was observed leaving Toccoa driving a white Ford Fusion.  (*Id.*).  At 1:22 p.m., Agent Posey saw Jones arrive at Chosewood Auto, and Steeple arrived there at 1:33.  (*Id.* at 52-53).  Mayfield arrived there at 1:42 and left at 2:05.  (*Id.* at 53).  Jones left at 2:07 and both Jones and Mayfield traveled north when they left.  (*Id.*).  The affidavit contains agents' observations and information from CRS #1 indicating that Jones and Mayfield engaged in drug trafficking activities that day after they left Chosewood Auto, culminating in Mayfield meeting with the driver of a green Honda who was apprehended that evening along with his passenger (Thurston Martin and Kevin Stowers) after they threw what appeared to be cocaine out of the car and took flight.  (*Id.* at 53-57).  Agents found a large brick of suspected cocaine and another brick of cocaine was found in the Honda.  (*Id.* at 57-58).  On February 10, 2016 CRS #1 provided information that Steeple and Jones intended to travel to 1995 Carithers Way, Marietta, Georgia to help Howard move items from another address to the Carithers Way address and to obtain additional drugs from Howard.  (*Id.* at 58).  Jones' truck was seen at the Carithers Way address at 11:25 a.m.  (*Id.*).

The undersigned finds that these allegations connect Steeple, his residence, and the Chosewood Auto location, to Mayfield and Jones and to their alleged drug trafficking activities.   Steeple contends that the information contained in the affidavits was stale (Doc. 141 at 20-22), but the undersigned disagrees.  In light of the ongoing nature of the alleged drug trafficking activity and information about that activity in January and February 2016 set forth in the affidavits, the undersigned finds that Bridges' affidavits were not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

### 3.    First *Leon* Circumstance

Finally, Steeple asserts that Bridges' affidavits misled the issuing judge by failing to disclose that "CRS #1" is a recording device and creating the "false impression" that the confidential reliable source (CRS) was a human rather than a wiretap, and he requests that the Court hold an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  (Doc. 350-1).  In *Franks*, "the Supreme the Supreme Court addressed the first exception to the application of the good faith doctrine of Leon – whether a defendant has the right to challenge the truthfulness of factual statements made in an affidavit in support of a search warrant."  *United States v. Skow*, No. 1:11-CR-373-CAP-ECS, 2012 U.S. Dist. LEXIS 142668, at *9-10 (N.D. Ga. Sept. 13, 2012), *adopted by* 2012 U.S. Dist. LEXIS 142091 (N.D. Ga. Oct. 1, 2012).  "Entitlement to a *Franks* hearing requires a defendant to make a

'substantial preliminary showing' establishing (1) the affiant deliberately or recklessly included a false statement, or failed to include material information, in the warrant affidavit; and (2) the allegedly false statement or omission was necessary to the finding of probable cause." *United States v. Gray*, 544 Fed. Appx. 870, 882 (11th Cir. 2013) (unpublished decision) (citing *Franks*, 438 U.S. at 155-56). "The defendant's attack must be 'more than conclusory,' " and " '[a]llegations of negligence or innocent mistake are insufficient.' " *Id.* (quoting *Franks*, 438 U.S. at 171). "Allegations of deliberate falsehood or reckless disregard for the truth 'must be accompanied by an offer of proof.' " *United States v. Rousseau*, 628 Fed. Appx. 1022, 1023 (11th Cir. 2015) (unpublished decision) (quoting *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006)). Moreover, " 'even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause.' " *Gray*, 544 Fed. Appx. at 882 (quoting *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997)). "[T]he defendant must show that, if the misrepresentations were removed from, or the omitted facts were included in, the warrant affidavit, then probable cause would be lacking." *Rousseau*, 628 Fed. Appx. at 1023. "If the warrant would still support probable cause, then no hearing is necessary." *Id.*

It is undisputed that references to CRS #1 in Bridges' affidavits are references to information obtained through wiretaps authorized by Stephens

County Superior Court Judge Russell W. Smith.  (*See* Doc. 330-5).   Steeple contends that Bridges' affidavit misleads "the reader to believe that the CRS is a person" and asserts that the affidavit improperly makes conclusions about what the information the CRS provided as opposed to what the wiretapped conversations actually stated:  "While investigators might derive these conclusions from information provided by the wiretap, the wiretap itself could have presented only evidence on which the conclusions are based, not the conclusions themselves."  (Doc. 350-1 at 5-6).  The undersigned finds that these contentions are insufficient to show that Agent Bridges' deliberately or recklessly misled the issuing judge such that the good faith exception to the exclusionary rule does not apply.

In the first place, the affidavits never stated that CRS #1 is a human being or described CRS #1 in a way that indicated that it was human, and therefore the undersigned finds that Steeple has not shown that Bridges' references to CRS #1 to be deliberate falsehoods or reckless disregard for the truth.  The affidavits state that CRS #1 provided information to the agents, which appears to be what happened.  Moreover, even if the affidavits had stated (or Agent Bridges otherwise informed the issuing judge) that CRS #1 was a wiretap, that information would only provide additional support for a finding of probable cause.   It certainly would not undermine it.  *See United States v. Glinton*, 154 F.3d 1245, 1255 (11th Cir. 1998) ("Nor does the fact that the 'confidential informant' referred to in the affidavit was

actually a wiretap on Martin's phone affect probable cause . . . .  The fact that a wiretap was the basis for gaining confidential information does not detract from the reliability or veracity of the source. In fact, upon learning of the means by which this information was obtained, the magistrate judge could gain reassurance as to the veracity of the information.").

Critically, as the Government points out, in his January 5, 2016 Order authorizing the wiretaps at issue in these cases, Judge Smith ordered that "all law enforcement officers are to refer to the intercepted communications as a 'confidential source' for all relevant purposes; such as search warrant affidavits . . . until such time as notice is required to be supplied to the suspects in this investigation whose communications have been intercepted or until such time as the existence of the interceptions are revealed through court proceedings."  (Doc. 330-5 at 2).  Given that directive, the undersigned cannot find that Agent Bridges' compliance with it was unreasonable or showed that he deliberately misled the issuing judge, nor does it indicate that Bridges' designation of the intercepted communications as "CRS #1" was a misrepresentation or omission "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Herring*, 555 U.S. at 144.

The undersigned also finds no merit to Steeple's contention that Bridges misled the issuing judge by "offering his own interpretation of wiretap evidence as the reports of confidential informant" rather than the wiretap communications themselves. (*See* Doc. 350-1 at 10-11).  In the first place, Steeple has not shown that Bridges' characterizations of information provided by CRS #1 were false or misleading.  In response to Steeple's and Howard's amended motions to suppress, the Government has produced transcripts and summaries of those communications (*see* Doc. 359-2 through 359-5), and as the Government discusses in detail in its response (*see* Doc. 359 at 14-19), those transcripts and summaries support Agent Bridges' description of the information provided by "CRS #1."  Steeple did not submit a reply to rebut the Government's presentation, nor did he produce any support for his contention that Bridges' affidavits misrepresented the content of the intercepted communications, and therefore he has not shown that Agent Bridges' descriptions of the information provided by "CRS #1" were materially false or contained material omissions.  Critically, he has not shown that if the transcripts of the wiretap communications had been presented to the issuing judge, they would have prevented a finding of probable cause.  *Gray*, 544 Fed. Appx. at 882.

Because Defendant Steeple has not shown materially false statements or material omissions in Agent Bridges' affidavits for Tabitha Paige Lane or Chosewood Auto, the undersigned finds that he has not shown that the first

circumstance in *Leon* has been met, i.e., that the issuing judge was misled by information Bridges knew or should have known was false, nor has he shown entitlement to a hearing under *Franks*.

The undersigned finds that the *Leon* good faith exception to the exclusionary rule applies and therefore **RECOMMENDS** that Defendant Steeple's motion and supplemental motion to suppress evidence seized from the Tabitha Paige Lane and Chosewood Auto locations pursuant to search warrants be **DENIED**.

## III. Defendant Howard's Motion And Amended Motion To Suppress (Docs. 152, 346)

### A. Motion To Amend Motion To Suppress (Doc. 349)

Like Steeple, Defendant Howard also moved to amend his motion to suppress to assert arguments based on the failure to identify CRS #1 as a wiretap, and for the same reasons discussed above with respect to Steeple's motion to supplement his motion to suppress, the undersigned also **RECOMMENDS** that Howard's motion to amend his motion to suppress be **GRANTED**.

### B. Motion To Suppress As Amended

Defendant Howard moves to suppress evidence seized from his purported residence at 1995 Carithers Way, Marietta, Georgia pursuant to a search warrant issued on February 11, 2016 by a Cobb County Magistrate Judge (*see* Doc. 330-4 at 76-78) based on an affidavit submitted by GBI Special Agent Ken Howard (*see*

33

Doc. 330-4 at 1-75), and he also moves to suppress evidence seized from Chosewood Auto pursuant to the search warrant discussed above.  (Doc. 141).

First, as to the Chosewood Auto search, the Government argues that Howard does not have standing to challenge the Chosewood Auto search warrant because he has not established a legitimate expectation of privacy in that location, a public business, where he was at most "merely present" there.  (Doc. 330 at 21).  Howard has not shown that, like Steeple, he was employed by Chosewood Auto, nor has he shown that he had any ownership or other property interest in that business or location.  He simply asserts that "[t]he Chosewood Auto Affidavit alleges that Chosewood Auto was to be a meeting place for [Howard] and others," and therefore he "has legal standing to challenge the search warrant, the Government's search of the Chosewood Auto, and the use of evidence seized pursuant to that warrant."  (Doc. 152 at 3).  The undersigned will assume for the sake of discussion that Howard has standing to challenge the Chosewood Auto search because, for the reasons discussed above, the undersigned finds that the *Leon* good faith exception applies to the search of Chosewood Auto.

Howard's arguments in support of suppression of evidence seized from Chosewood Auto are the same as those made by Steeple, i.e., the affidavit does not establish probable cause that a crime has been committed or was being committed there (*see* Doc. 152 at 3-4, 10-11); the search warrants are insufficiently specific

"and allow the individual officers to use their own discretion for what they are looking for" (*id*. at 11); the relevant information was stale (*id*. at 16); and the affidavit failed to disclose that CRS #1 was a recording device, thus misleading the issuing judge as to the source of information presented, and it improperly presented the agents' interpretations of the intercepted communications (*see* Doc. 346).[7]  As discussed above, the undersigned rejected those contentions with respect to the Chosewood Auto affidavit and warrant, and therefore finds that the *Leon* good faith exception applies to that search.   Therefore, it is **RECOMMENDED** that Defendant Howard's motion to suppress evidence seized from Chosewood Auto be **DENIED**.

Turning to Howard's contentions about the Carithers Way search, the undersigned also finds that the *Leon* good faith exception applies to that search. Howard has not shown the first circumstance is present—Agent Howard did not deliberately mislead the issuing judge by not disclosing that CRS #1 was a wiretap, and Defendant has not shown that Agent Howard's recitation of information obtained from CRS #1 was false or misleading or that it omitted material information.  Like Steeple, Howard did not submit a reply and has not rebutted the Government's presentation in response to his amended motion, including

---

[7] Howard also argues that suppression is required because the affidavits supporting the search warrants contained information from unlawful wiretaps (*see* Doc. 152 at 7-10), but the Court has denied Defendants' motions to suppress wiretap evidence (*see* Doc. 312) and therefore the undersigned does not reach this argument.

transcripts and summaries of the relevant intercepted communications, which support Howard's descriptions of that information.   (*See* Doc. 359).   In his amended motion, Howard asserts that several statements were false and contends that Agent Howard omitted certain information about the events described in his affidavit (*see* Doc. 346 at 3-7), but he has not proffered support for those assertions as required under *Franks*. *See Rousseau*, 628 Fed. Appx. at 102.   Nor has he shown that if the omitted information were included in the affidavit, it would have prevented a finding of probable cause.  *See Gray*, 544 Fed. Appx. at 882.   Thus, he has not shown that Agent Howard deliberately misled the issuing judge, nor has he shown entitlement to a *Franks* hearing.

The second *Leon* circumstance is not met as there is no evidence that the issuing magistrate judge wholly abandoned his judicial role, and the undersigned finds that the fourth circumstance is not met because the search warrant does not fail to particularize the place to be searched or the things to be seized.   The Carithers Way warrant (Doc. 330-4 at 76-78) lists the following persons, premises, or property to be searched: 1995 Carithers Way, Marietta, Georgia, with physical location and description of property, and any outer buildings or structures within the curtilage; Defendant Howard with date of birth, social security number and physical description; specific vehicles described in the warrant; and any vehicles in the cartilage of the described premises.   (Doc. 330-2 at 76).   The warrant also lists

14 categories of "instruments, articles, person(s), or things" to be searched for and seized, which "constitute evidence connected with" violations of the Georgia Controlled Substances Act, as listed on the first page of the warrant. (*Id.* at 76-77). The undersigned finds that the warrant sufficiently describes the items to be searched for and seized, limited to evidence of violations of Georgia Controlled Substances Act, and therefore the fourth circumstance described in *Leon* is not met.

Finally, the undersigned finds that Agent Howard's affidavit supporting the warrant was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit states that on January 31, 2016 at 12:28 p.m., Agent Bridges notified agents that Defendant Howard was in Toccoa and had contacted Quincy Jones and made arrangements to pick up money from Jones at Jones' residence in Toccoa per CRS #1. (Doc. 330-4 at 45). At 12:49, Bridges received information from CRS #1 that Howard was at Jones' residence, and at 12:51 Agent Morgan observed a white Jeep that had previously been identified as belonging to Howard, which departed at 12:59 p.m. (*Id.* at 46). The Jeep was registered to Meghan Rose Sanders, Jones' girlfriend. (*Id.*). Agent Moore followed the Jeep traveling south on Highway 17 towards I-985. (*Id.*). CRS #1 informed Agent Howard that Sanders was away of the illegal activities of Jones, Mayfield, and Howard and kept records for vehicles purchased and

registered in her name but used almost exclusively by Jones and Howard.  (*Id*. at 46-47).  Based on Agent Howard's training and experience, he believed that Sanders was likely the designee of Jones and Howard, i.e., a person drug traffickers use to place assets in his or her name to conceal assets from law enforcement.  (*Id*. at 47).

On February 1, 2016, Agent Bridges received information from CRS #1 that Jones and Howard were arranging a meeting later that day to move Howard from 376 Vinings Vintage Circle to another location.  (*Id*. at 48).  Agents learned through surveillance that Howard was planning on moving from 376 Vinings Circle, and Agent Bridges received information from CRS #1 that Howard's new address was 1995 Carithers Way, Marietta, Georgia.  (*Id*. at 49).  Agent Stanley received information from CRS #1 that Jones intended to obtain drugs from Howard later that evening and distribute the drugs in Toccoa the next day.  (*Id*. at 48).  Agents observed Jones and an unidentified passenger pulling a trailer and leaving Toccoa.  (*Id*.).  CRS #1 indicated that Jones was on the way to meet Howard and that in addition to obtaining drugs from Howard he also planned to deliver marijuana to Howard.  (*Id*. at 48-49).  Jones arrived at 1995 Carithers Way at 9:57 p.m.  (*Id*. at 49).

On February 2, 2016, Agent Howard observed a moving van parked at the Carithers Way location, and several other vehicles, including Howard's white Jeep.

38

(*Id.* at 50).   The next day, Agent Jobe received information from CRS #1 that Howard intended to meet Jones in Gainesville, Georgia in order to travel to another location to meet Steeple and Mayfield and another party to purchase cocaine.  (*Id*. at 53).   At 12:40 p.m. Jones and Howard met at a gas station in Gainesville, Howard exited his vehicle and opened the trunk, and he and Jones took out a heavy box and placed it in Jones' truck along with other items from Howard's vehicle. (*Id.* at 54).

On February 10, 2016, Agent Howard received information from CRS #1 that Steeple and Jones intended to travel to 1995 Carithers Way to assist Howard in moving items from 376 Vinings Vintage Circle and to obtain additional drugs from Howard.  (*Id.* at 60).   At 11:25 a.m., Agent Hodges told Agent Howard that he drove past 1995 Carithers Way and saw Jones' truck there.  (*Id*.).

The undersigned finds that these allegations connect Howard to 1995 Carithers Way, connect Howard to drug trafficking activity by Mayfield, Jones, and others, and connect that activity to 1995 Carithers Way, as recently as the day before the warrant was issued.  In light of the ongoing nature and scope of the alleged drug trafficking activity and information about Howard's activities in February 2016 set forth in Agent Howard's affidavit, the undersigned finds that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Because the *Leon* good faith exception to the exclusionary rule applies, suppression is not required even if probable cause did not support the issuance of the Carithers Way warrant.  It is therefore **RECOMMENDED** that Defendant Howard's motion to suppress evidence seized from 1995 Carithers Way be **DENIED**.

## Summary

It is **RECOMMENDED** that Defendant Mayfield's Motion To Suppress Physical Evidence Seized In Unlawful Search (Doc. 121 in 2:16-CR-9 and Doc. 100 in 2:16-CR-10) be **DENIED**.

It is **RECOMMENDED** that Defendant Steeple's Request For Leave To File Out Of Time, His "Supplemental Motion To His First Motion To Suppress" (Doc. 350) be **GRANTED** and that his Motion To Suppress Physical Evidence Seized in Unlawful Search (Doc. 141) and Supplemental Motion To Doc. 141 First Motion To Suppress (Doc. 350-1) be **DENIED**.

It is **RECOMMENDED** that Defendant Howard's Request For Leave To File Out Of Time, His "Amended Motion To Suppress Physical Evidence Seized In Unlawful Search" (Doc. 349) be **GRANTED** and that his Motion To Suppress Physical Evidence Seized In Unlawful Search (Doc. 152) and Amended Motion To Suppress Physical Evidence Seized In Unlawful Search (Doc. 346) be **DENIED**.

**IT IS SO REPORTED AND RECOMMENDED** this <u>11th</u> day of <u>May</u>, 2018.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge